ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 17 2007

JAMES N. [illegible], Clerk
By: _____ Deputy Clerk

EVANGELINA FORSBERG                      )
                                         )
                                         )
        Plaintiff,                       )
                                         )        CIVIL ACTION
                                         )        FILE NO. _____
                                         )    1:07-CV-3116
JAMES PEFANIS, AME FINANCIAL             )
CORPORATION and GEORGIA MUTUAL           )                -CAM
MORTGAGE CORPORATION                     )
                                         )        JURY TRIAL
                                         )        DEMANDED
        Defendants.                      )

**COMPLAINT**

Plaintiff Evangelina Forsberg ("Forsberg"), for her Complaint against

Defendants, shows the following:

**OVERVIEW**

1.

This is an action brought by Forsberg against her former employers, AME

Financial Corporation and Georgia Mutual Mortgage Corporation, and their

respective owner, President and CEO James Pefanis ("Pefanis"), for violations of

Title VII of the Civil Rights Act of 1964 and Georgia law. As set forth in detail

below, Forsberg, at the hands of Pefanis, was subjected to a litany of egregious

sexual harassment and other torts that culminated with Pefanis restraining Forsberg, grabbing and clutching Forsberg's genitalia and inviting other senior officers of the employer to do the same.

## JURISDICTION AND VENUE

### 2.

This is a civil action over which original, federal question jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331 and The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and supplemental jurisdiction is vested in this Court under 28 U.S.C. § 1367.

### 3.

Venue is appropriate in this Court under 28 U.S.C. § 1391 as this action is brought in a judicial district in which the defendants reside or may be found at the time the action is commenced and in which the discriminatory, unlawfully harassing and tortious acts described below occurred. Further, Plaintiff resides and was employed by Defendants within the Northern District of Georgia.

## PARTIES, JURISDICTION AND VENUE

### 4.

Forsberg is an individual currently residing at 4340 Maple Valley Drive, Cumming, Georgia, 30040.

5.

Pefanis is an individual currently residing at 6835 Matt Highway, Cumming, Georgia, 30028. He is currently an owner and the Chief Executive Officer of Defendant AME Financial Corp ("AME") and Georgia Mutual Mortgage Corporation ("Georgia Mutual"). Pefanis can be served with process at either his residential address, or at the principle place of business of AME.

6.

AME purports to be a for-profit limited liability corporation incorporated in the State of Georgia. AME purports to be in the business of providing mortgage brokerage services. According to records maintained by the Georgia Secretary of State, AME maintains its principal place of business at 6455 Shiloh Road, Suite D, Alpharetta GA 30005. AME can be served with process by serving its President, Pefanis, at AME's stated principal place of business or by servicing AME's Registered Agent, Ron D. Eckland, at 4036 Wetherburn Way, Norcross, Gwinnett County, GA 30092. AME is an employer within the meaning of Title VII.

7.

Georgia Mutual purports to be a for-profit limited liability corporation incorporated in the State of Georgia. Georgia Mutual purports to be in the business of providing mortgage brokerage services. According to records maintained by the

Georgia Secretary of State, Georgia Mutual maintains its principal place of
business at 4036 Wetherburn Way, Norcross, Gwinnett County, GA 30092.
Georgia Mutual can be served with process by serving Ron D. Eckland at Georgia
Mutual's stated principal place of business.

8.

Defendants jointly employed Forsberg beginning in July 2006 and
continuing into August 2007 – when she was constructively discharged as a result
of Defendants' outrageous sexual assault, harassment and mistreatment of her.

9.

Each of the Defendants is subject to the jurisdiction of this Court, and venue
of this action is proper in this Court.

## FACTUAL BACKGROUND

10.

As indicated above, AME and Georgia Mutual purport to be in the business
of providing various financial services – including mortgage brokerage services.
While AME and Georgia Mutual do exist, in part, to provide these services, they
also exist for an unlawful purpose.  As set forth in detail below, they exists in part,
to provide their owner, Pefanis, an opportunity and platform to engage in perverse
and deviant sexual behavior against employees, including sexual harassment and
sexual assault.  As set forth below, Pefanis' sexual misconduct at AME and

Georgia Mutual is so pervasive, brazen and outrageous that the only logical conclusion is that one of the primary business missions of AME and Georgia Mutual (both alter egos of Pefanis) is to provide Pefanis with an outlet to engage in his perverted sexual misconduct.

11.

In July 2006, Defendants hired Forsberg.  At the time that she was hired, Forsberg had no idea about the sexual misconduct that Pefanis routinely engaged in – and that was both tolerated and enabled by AME and Georgia Mutual.

12.

At the time she was hired, Forsberg held the title of "Junior Underwriter." She was a high performer and was promoted to an Account Executive in November 2006.

13.

As an Account Executive, Forsberg's performance was not just high – but stellar.   Pefanis called her while she was on vacation in late July 2007 and told her that:  (1) he was proud of her because she had funded over $10 million in loans through the month; and (2) upon her return from vacation, he wanted to discuss promoting her again.

14.

As a result of Forsberg's exceptionally high performance, she was in a position to earn commission-based compensation during 2007 that would have exceeded $100,000.  This was far more annual compensation that Forsberg had ever earned at any point in her life.

15.

Despite her extraordinary job performance, in the workplace Forsberg was forced to tolerate, be exposed to, be apprised of, witness and be subjected to outrageous forms of sexual harassment and sexual assault by Pefanis.  This sexual harassment was not isolated or minor – but was a pervasive and regular part of the day-to-day working life at AME and Georgia Mutual that was conducted by the CEO of these companies.

16.

Simply by way of example, at various times that she was employed at the companies, she routinely witnessed Pefanis grab and grope the genitalia and other private body parts of other employees.  As set forth in detail below, Pefanis eventually turned his outrageous and unlawful sexual assaults toward Forsberg herself.

17.

As other examples, Pefanis routinely made unlawful sexual statements to Forsberg, telling her things such as:  (a) she had "small titties;" (b) she should "go get some [breast] implants, and she might make some money;" (c) she was a "slut;" (d) she had a "small butt;" (e) he didn't understand how small-framed women were able to have sex with large men; and (f) other similar outrageous statements.

18.

With respect to others in the workplace, Pefanis frequently made the same and similar comments – except when he was referring to black individuals – when he chose to use phrases such as "big black nigger bitch."

19.

Pefanis' repeated and pervasive harassment of Forsberg was not limited to sexually inappropriate statements.  He also repeatedly engaged in inappropriate sexual misconduct, including:  (a) touching and attempting to touch Forsberg;  (b) attempting to look down her shirt at her breasts; and (c) other similar sexual misconduct.

20.

To state the obvious, none of Pefanis' misconduct was a surprise to either AME or Georgia Mutual.  Not only was Pefanis the owner and CEO of these two entities – but numerous senior officers of AME and Georgia Mutual witnessed, tolerated, laughed at, and encouraged Pefanis to engage in his perverted misconduct.  Officers of AME and Georgia Mutual also ignored Forsberg's repeated complaints about Pefanis' misconduct.

21.

Pefanis' misconduct was so ingrained in the workplace that it became part of the daily fabric of working with Pefanis and the companies that he owned – and individuals who were connected with Pefanis' mortgage empire were acutely aware of it.  Unfortunately, those with the opportunity and ability to curb this misconduct chose to sit silently on their hands, and let employees get harassed, assaulted and battered.

22.

Indeed, neither Pefanis, AME nor Georgia Mutual did anything to curb Pefanis' perverted and unlawful conduct, even *after* employees made legal claims relating to the conduct.  Specifically, Forsberg has been informed that at least two of the women that Pefanis sexually assaulted in the workplace made legal claims

8

toward Pefanis, AME and/or Georgia Mutual -- and that these two women were paid substantial compensation by Pefanis and/or AME that was, in part, designed to keep them quiet about Pefanis' sexual misconduct and AME's condoning and ratifying his conduct. This "hush money" was designed to ensure that these women kept quiet about Pefanis' conduct and helped ensure that Pefanis would be permitted to continue his sexual misconduct unabated for years to come.

23.

Defendants' negligent and intentional decision to simply pay hush money to women who complained about Pefanis – rather than to adequately investigate and respond to the complaints – caused continuing sexual harassment, assaults, battery and other unlawful conduct which damaged Forsberg and others in the workplace.

24.

On August 16, 2007, as a direct result of the negligence and intentional conduct of the Defendants, Forsberg was again victimized by Defendants when Pefanis and others engaged in the sexual assault and battery described below and thereby constructively discharged Forsberg.

25.

On that date, Forsberg was in the AME/Georgia Mutual offices checking on file status and for a short sales meeting. Pefanis was in the office where Forsberg was standing, and as was his practice was making inappropriate comments about a

9

male employee who had impregnated his wife. Pefanis then pulled another AME employee into the office – and referring to another employee in the office, David Popke ("Popke"), made a variety of sexually inappropriate statements about him. Among other things, Pefanis physically turned Popke around and, directing attention to Popke's pants, stated to Forsberg and others that Popke was "wearing tight jeans and all his shit is showing."

26.

Pefanis then turned his conduct and comments toward Forsberg. He turned to her, while she was standing in an enclosed area between a filing rack and a desk, and approached her from behind. Recognizing that she was essentially in a corner, Pefanis trapped Forsberg and prevented her from moving by grabbing her around her waist and tightly holding on to her. He then took one of his hands that was then around her waist, and slid it down from Forsberg's waist to her vagina. While still holding Forsberg tightly and preventing her from moving, Pefanis grabbed her vagina, felt it and tightly held onto it. He held onto and felt her vagina for several seconds – despite Forsberg's struggle to get away from the sexual assault. While feeling and holding Forsberg's vagina, Pefanis then began to make comments about the size of her vagina – proclaiming it to be really tiny.

27.

Forsberg informed Pefanis in no uncertain terms that his conduct was

unwanted and outrageous – and told him not to ever touch her again.  Undeterred,

however, a few moments later, Pefanis told Vice President Bob Brown ("Brown")

about his sexual battering of Forsberg – and he encouraged Brown to do the same.

Specifically, Pefanis told Brown that he had "just felt her [Forsberg's] shit and you

should feel it – it's really, really small."

28.

After this and similar comments, Forsberg informed Pefanis that he was

"sick and nuts" and left the office.  She appropriately concluded that she could no

longer work for the Defendants -- as the conduct amounted to a constructive and

illegal termination of her employment -- and she sent an e-mail confirming this

fact.

29.

After committing sexual battery on Forsberg, Pefanis began speaking by

phone with numerous individuals in an obvious effort to downplay his conduct.

These conversations and comments made by Pefanis such as "I didn't do it in front

of everyone" only served as further admissions of Pefanis' conduct.

30.

Plaintiff has understandably suffered damages, including physical impact damages, pecuniary damages (including loss of wages and other special damages) and extreme emotional distress as Defendants intended for her to do.

## SATISFACTION OF ADMINISTRATIVE PREREQUISITES

31.

On October 18, 2007, Forsberg filed a Charge of Discrimination against AME and Georgia Mutual alleging unlawful sexual harassment and discrimination.

32.

On December 14, 2007, the EEOC issued a right to sue letter to Forsberg. This lawsuit is filed within 90 days of the date Plaintiff received that Notice of Right to Sue.

33.

All administrative prerequisites for filing a Title VII claim against the employer Defendants have been fully satisfied by Forsberg.

## CLAIMS

## COUNT ONE

### (Unlawful Sexual Harassment And Discrimination Under Title VII)

34.

Plaintiff repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 33 above as if set forth fully herein.

35.

Under Title VII it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions or privileges of employment because of such individual's sex.

36.

AME and Georgia Mutual separately and jointly discriminated against Plaintiff because of her sex through sexual harassment (both hostile environment and tangible job action sexual harassment), and the tangible job actions and adverse employment actions taken against her.

37.

As a result of the unlawful conduct of the violations of Title VII's prohibition against sex discrimination, Plaintiff has suffered losses, including but

not limited to, the loss of employment, substantial loss of pay and benefits, and loss of reputation and emotional distress.

38.

Plaintiff is entitled to a declaratory judgment that the actions of AME and Georgia Mutual violated Title VII and is entitled to other remedies, including, but not limited to, back pay and benefits, front pay and benefits, compensatory damages, punitive damages, interest, attorneys' fees and costs.

**COUNT TWO**

**(Torts Of Negligent Hiring and Retention)**

39.

Plaintiff repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 38 above as if set forth fully herein.

40.

AME and Georgia Mutual negligently hired and/or retained Pefanis and other employees of AME and Georgia Mutual with knowledge of their practices of sexual harassment, assault and battery.   In this regard, Defendants AME and Georgia Mutual breached their duty to exercise ordinary care not to hire or retain an employee they knew or should have known posed a risk of harm to others where it was reasonably foreseeable from the tendencies, propensities, and/or actions of

14

the individual hired and/or retained that he could cause harm to Plaintiff and/or others at AME and Georgia Mutual.

41.

Plaintiff has suffered damages from Defendants' tortious conduct, including economic, pecuniary and emotional distress damages.  Plaintiff's emotional distress has caused physical manifestations.

**COUNT THREE**

**(Assault and Battery)**

42.

Plaintiff repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 41 above as if set forth fully herein.

43.

Defendant Pefanis engaged in assault and battery of Plaintiff.  These torts were committed in the scope of Pefanis' employment with AME and in the furtherance of the Defendant's business which, as described above, was set up for the express purpose of providing Pefanis a platform and outlet for his sexually perverted conduct.

44.

The actions of Pefanis caused Plaintiff to reasonably apprehend a violent injury from the unlawful acts.

15

45.

Pefanis touched Plaintiff in a harmful and offensive manner to cause her physical harm and to cause her to suffer insulting or provoking contact.

46.

Defendants AME and Georgia Mutual are liable to Plaintiff for the assault and battery committed by Pefanis.

47.

Plaintiff has suffered damages from Defendants' tortious conduct, including economic, pecuniary and emotional distress damages.   Plaintiff's emotional distress has caused physical manifestations.

## **COUNT FOUR**

### **(False Arrest And False Imprisonment)**

48.

Plaintiff repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 47 above as if set forth fully herein.

49.

During the sexual assault of Plaintiff, Plaintiff was restrained against her will by Pefanis by both force and fear and was thereby required to submit to the sexual assault and sexual battery that was committed against her.

50.

Pefanis' false arrest and false imprisonment of Plaintiff was extreme and outrageous and was intended to and did cause Plaintiff to suffer severe emotional distress. Plaintiff's emotional distress has caused physical manifestations. The outrageous conduct was committed in the course and scope employment with AME and Georgia Mutual and in the furtherance of the business of the Defendants.

51.

Defendants AME and Georgia Mutual are liable to Plaintiff for the false arrest and false imprisonment committed by Pefanis.

52.

Plaintiff has suffered damages from Defendants' tortious conduct, including economic, pecuniary and emotional distress damages. Plaintiff's emotional distress has caused physical manifestations.

## COUNT FIVE

### (Invasion of Privacy)

53.

Plaintiff repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 52 above as if set forth fully herein.

54.

Defendant Pefanis repeatedly intruded upon Plaintiffs seclusion and solitude, and into her private affairs. This conduct was committed in the course and scope of employment with AME and Georgia Mutual and in the furtherance of the business of the Defendants.

55.

Plaintiff has suffered damages from Defendants' tortious conduct, including economic, pecuniary and emotional distress damages. Plaintiff's emotional distress has caused physical manifestations.

## COUNT SIX

### (Violations of O.C.G.A. § 34-2-10)

56.

Plaintiff repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 27 above as if set forth fully herein.

57.

O.C.G.A. § 34-2-10 provides:

Every employer shall furnish employment which shall be reasonably safe for the employees therein, shall furnish and use safety devises and safeguards, shall adopt and use methods and processes reasonably adequate to render such an employment and place of employment safe, and shall do every other thing reasonably necessary to protect life, health, safety, and welfare of such employees.

58.

Defendants' actions summarized and set forth herein violated of O.C.G.A. § 34-2-10.   Plaintiff was placed in fear for her physical safety because of the actions and inactions of the Defendants.

59.

Plaintiff has suffered damages from Defendants' tortious conduct, including economic, pecuniary and emotional distress damages. Plaintiffs' emotional distress has caused physical manifestations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays:

A.     That a declaratory judgment be issued declaring that the actions of AME and Georgia Mutual violated Title VII and that Plaintiff be awarded injunctive relief under Title VII;

B.     That judgment be entered in favor of Plaintiff and jointly and severally against AME and Georgia Mutual awarding Plaintiff all remedies available under Title VII, including but limited to, front pay and benefits, back pay and benefits, compensatory damages, punitive damages, interest, fees, and costs;

C.   That Plaintiff be awarded her costs and attorneys fees for all costs and fees incurred in connection with this matter;

D.   That Plaintiff be awarded judgment of compensatory and punitive damages on her claims under Georgia law;

E.   That Plaintiff be awarded such other and further relief that the Court deems just and equitable;

F.   That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have fully remedied the practices complained of and are determined to be in full compliance with the law and that all amounts awarded are paid to Plaintiff by Defendants.

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS ACTION**

This 17th day of December, 2007.

Respectfully submitted,

Thomas J. Munger
Georgia Bar No. 529609

MUNGER & STONE, LLP
999 Peachtree Street, N.E.
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0829
Facsimile: (404) 815-4687

20

_____
Benjamin A. Stone
Georgia Bar No. 683850

MUNGER & STONE, LLP
999 Peachtree Street, N.E.
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0933
Facsimile:  (404) 815-4687