UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EVANGELINA FORSBERG )<br>)<br>)<br>   Plaintiff, )<br>) | <br><br><br><br>CIVIL ACTION FILE NO. |
| v. )<br>) | 1:07-cv-3116-JOF-RJV |
| JAMES PEFANIS, )<br>AME FINANCIAL CORPORATION )<br>and GEORGIA MUTUAL )<br>MORTGAGE CORPORATION )<br>)<br>)<br>   Defendants. ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR DEFAULT SANCTION FOR
<u>DEFENDANTS' FRAUD ON THE COURT</u>**

**I.**     **<u>INTRODUCTION</u>**

There has been a very recent revelation of fraud on the Court by Defendants regarding key evidence on the pivotal factual issue in this case.  Plaintiff Forsberg's central factual allegation in this suit is that Defendant Pefanis sexually assaulted her in an AME office in front of two then-AME employees.  Only one of those alleged two eye-witnesses, David C. Popke ("Popke"), is no longer employed and paid by Pefanis and thus is a pivotal witness in this case.

1

Defendants listed Popke on their witness list for the trial in this case set on the October 13 calendar.  Defendants also proffered as trial evidence a statement purportedly signed by Popke whereby Popke claims to have no recollection of witnessing the alleged assault ("Popke Statement").  Defendants produced the Popke Statement in discovery and relied upon it to represent to the Court its central premise in their Briefs and in their Statement of the Case that Forsberg cannot corroborate her assault allegation.

Defendants never provided Plaintiff with Popke's current address.  But Plaintiff just located him in Texas.  He has now testified by Declaration that (1) he indeed witnessed the assault; (2) AME co-owners Pefanis and Wayne Bonertz ("Bonertz") sought to pressure him to sign the false Popke Statement but he never did so; and (3) the signature on the Popke Statement Defendants proffered as linchpin evidence in this case is a forgery.

Plaintiff has retained a renowned handwriting analysis expert.  The expert's opinion confirms Popke's testimony and that the clear and convincing evidence (the standard on this motion) establishes that the Popke Statement is a forgery.   In the last week, Plaintiff has provided Defendants with repeated opportunities to present contrary evidence but Defendants have failed to do so.  Instead, Defendants have provided evasive, illogical and incredible positions.

As set forth below, federal courts uniformly hold that, when a party fabricates a document relating to a key issue in the case, the appropriate sanction is the ultimate sanction of dismissal or default. Accordingly, Plaintiff respectfully requests that the Court enter default against Defendants and award Plaintiff her attorneys' fees and costs incurred because of Defendants' fraud on the Court.

## II. STATEMENT OF FACTS

### A. Forsberg's Pivotal Allegation That Pefanis Sexually Assaulted Her On August 16, 2007 In The Presence Of Popke

Forsberg's primary factual allegation is that, on August 16, 2007, in the presence of then Senior Accounting Manager David Popke ("Popke"), Pefanis approached Forsberg in co-worker Mildred Hinton's ("Hinton") office, held her from behind, grabbed and held her vagina and stated that it was tiny. Magistrate Judge R&R, Dkt. 105, pp. 8-9. Forsberg left AME and resigned her employment. Id. at pp. 10-11. Defendants' consistent and central defense is that "the facts are that Forsberg made up this allegation" of the August 16 sexual assault. Dkt. 145, p. 6.

### B. Defendants Linchpin Use Of The Popke Statement In This Lawsuit

Popke resigned his AME employment in December 2007 and was thereafter not financially dependent on Pefanis. Thus, his account of the events in Hinton's office on August 16, 2007 is key evidence in this case. Forsberg put Defendants

on notice of her claim that Popke witnessed the assault in a letter from her counsel dated October 1, 2007.

In February 2007, Defendants' then counsel, Lionel Postic, Esq., produced to Plaintiff's counsel a document he claimed that he had obtained from Pefanis – a one-page typed statement purportedly signed by Popke that states:

> To Whom It May Concern:
>
> I do not recall the incident that Ms. Forsberg is referring to in the letter dated October 1, 2007.
>
> [Signature of "David Popke"]
>
> David Popke

"Popke Statement" – a copy of which is attached to this letter as Exhibit "A".

As recently as July 3 and August 13, 2009, Defendants asserted to the Court, "[a]round noon on August 16th, Forsberg claims that Pefanis grabbed her crotch in front of a number of employees. [Popke and Hinton] will all testify that no such thing occurred or that they did not witness any such event." Dkt. 133, Attachment "D", p. 5; Dkt. 145, p. 8 (emphasis added). Defendants have represented to the Court (including in support of its key evidentiary arguments), that their asserted lack of a corroborating witnesses to the alleged assault presents for Forsberg "a major evidentiary problem prohibiting her from obtaining a verdict in her case." Dkt. 133, p. 2. Defendants' only evidence submitted in this case to support their

4

repeated representation to the Court that Popke will not corroborate Forsberg's allegation and that Forsberg must therefore lose this case is the Popke Statement.

Accordingly, Defendants placed Popke on their witness list for trial regarding Forsberg's August 16 allegation and proffered as evidence the Popke Statement as Defendants' Exhibit No. 5 in its Exhibit List. Pre-Trial Order, Attachments F-2; G-2, Exh. No. 5.

### C. Plaintiff Locates Popke And Popke's Testimony

Because Defendant did not provide any current contact information for Popke, Plaintiff's counsel could not locate Popke to interview or depose him. However, after learning that he moved to Austin, Texas, Plaintiff's counsel retained an investigator who recently located Popke.

Popke has now submitted two Declarations. In his first Declaration, Popke testifies that, while in Hinton's office on August 16, 2007, he did indeed, "observe Jim Pefanis grab Hope Forsberg between her legs while holding her from behind." Exhibit "B", ¶ 3.

More importantly for this Motion, in his second Declaration, Popke has testified that he never signed the Popke Statement. Exhibit "C", ¶ 3. Instead, in the Fall of 2007, Pefanis and Bonertz told Popke that he needed to sign the type-written statement. Exhibit "C", ¶ 2. Each of them strongly implied to Popke that his continuing AME employment was contingent on him signing the statement. Id.

5

However, Popke did not sign the statement, and he then left his AME employment in December 2007.  Exhibit "C", ¶ ¶ 3, 4.

**D.      The Expert's Opinion**

A comparison of Popke's signature on his Declaration and the signature on the Popke Statement convincingly establishes even to a lay person that Popke did not sign the Popke Statement.  Exhibit "A" compared with Exhibits "B", p. 2.

Moreover, Plaintiff has retained a renowned Forensic Document Examiner as an expert -- Farrell C. Shiver of Shiver & Nelson in Woodstock, Georgia.  Mr. Shiver has substantial expertise and is well respected by this Court.  For example, in Metropolitan Life Ins. Co v. Womack, Civil Action No. 1:03-CV-3821-BBM (N. D. Ga. Aug. 5, 2005)(J. Martin), the Court relied upon Mr. Shiver's expert opinion of Mr. Shiver to conclude that the clear and convincing evidence established that an individual in that case had forged a key document.  The Court stated that it found Mr. Shiver "to be thoroughly helpful and well-qualified in his field."  Id. at * 5.

In this case, Mr. Shiver has reviewed (1) authentic signatures from Popke on file in Georgia agencies; (2) exemplar signatures recently obtained from Popke,

including those on the attached Declarations; and (3) a copy of the Popke Statement. [1]

As set forth below, the legal standard for establishing that Defendants committed sanctionable fraud on the Court is whether there is a high probability that Defendants forged the Popke Statement. On September 1, 2009, Mr. Shiver opined that it is indeed highly probable (indeed, virtually certain) that Popke did not sign the Popke Statement.

### E. Defendants' Failure To Present Evidence Contradicting The Clear And Convincing Evidence Of Fraud

In the past week, Plaintiff's Counsel has written Defense Counsel four times on this issue and Defendants' responses have been evasive, illogical, and incredible. Defendants' first response was that Pefanis and Bonertz denied forging the Popke Statement and that there were three witnesses who would testify that they witnessed Popke sign the Popke Statement. Plaintiff's requests that Defendants identify these three witnesses were met with days of delay. Finally, on August 31, Defendants claimed that two of the three witnesses were in fact Pefanis and Bonertz. Defendants now claim that the third purported witness was the next

---

[1] Plaintiff has asked Defendants to locate and preserve the original of the Popke Statement. While Defendants stated that they would "update" Plaintiff on the status of the original no later than August 27, they did not, and Defendants have ignored subsequent written inquiries regarding the original. Plaintiff logically has concluded that Defendants improperly destroyed the original.

7

highest ranking AME employee, Robert Anderson.[2]  Defendants admit that they (and not Popke) typed the Popke Statement.  Defendants then make the facially incredible claim that Popke did not type the one sentence statement because he was too busy to do so.  Defendants also have not attempted to suggest any possible motive why Popke would lie about whether he signed the Popke Statement.  There is no logical motive for him to lie.  The evidence of fraud on the Court is clear and convincing.

### III.   ARGUMENT

"[A] court has the inherent power to supervise and sanction the parties before it."  Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 2007 U.S. Dist. LEXIS 63242 (N.D. Ga. August 28, 2007)(Forrester, J.), affirmed, 561 F.3d 1298 (11th Cir. 2008).  "A court may use its inherent power to preserve the integrity of the judicial process and prevent the perpetration of fraud on the court."  Eagle Hospital Physicians, LLC, at * 8.

---

[2] Defendants could not have named less credible witnesses.  Anderson has admitted that, shortly after being noticed for deposition in this case, AME bought him an $80,000 car in his name that he uses for his personal use because of his "mid-life crisis" when he already had and retained a company car.  Smith, Anderson Dep., pp. 42-53 (attached hereto as Exhibit "D").  Apparently recognizing that there was no logical explanation for AME's purchase of this car for Anderson other than to suborn his perjury, under oath, Bonertz contradicted Anderson and (and apparently the car purchase documents) claiming that neither AME nor Pefanis helped Anderson buy his luxury car shortly before he was to testify.  Smith, Bonertz Dep., pp. 89-90 (attached hereto as Exhibit "E").

8

While this Court has recognized that the Eleventh Circuit has not specifically defined "fraud on the court," this Court has pointed out that the First Circuit has defined fraud on the court as "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Id. at * 8-9 (quoting Aoude v. Mobil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). "The key to unlocking the court's inherent power is a finding of bad faith." Kipperman v. Onex Corp., 2009 U.S. Dist. LEXIS 44457 (N.D. Ga. 2009) (Forrester, J.), (quoting In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006). "Clear and convincing evidence merely requires proof that the claim is highly probable." Tambourine Comercio International SA v. Solowsky, 2009 U.S. App. LEXIS 3056 * 29 (11th Cir. Feb. 17, 2009).

In Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 2007 U.S. Dist. LEXIS 63242 (N.D. Ga. August 28, 2007)(Forrester, J.), affirmed, 561 F.3d 1298 (11th Cir. 2009), this Court recently exercised its inherent sanctions authority and entered default against a defendant as a sanction for bad faith conduct, and that sanction was affirmed on appeal. In entering its default sanction, this Court recognized that the ultimate sanction against a defendant is appropriate only when

9

less drastic sanctions would not suffice.  Id. at * 8.  However, this Court stated that its default sanction "will act as a deterrent to other litigants . . ."  Id. at * 17. "Use of the 'ultimate sanction' addresses not only prejudice suffered by opposing litigants but also vindicates the judicial system as a whole, for such misconduct threatens the very integrity of the courts . . ."  Chemtall, Inc. v. CitiChem, Inc., 992 F. Supp. 1390, 1409 (S.D. Ga. 1998).

In supporting its default sanction conclusion in Eagle Hosp. Physicians, LLC,  this Court cited similar "ultimate sanction" holdings, including a case imposing the ultimate sanction against a party who, like Defendants here, manufactured evidence - -  Brady v. United States, 877 F. Supp. 444, 453 (C.D. Ill. 1994)("Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process.  Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence is merely excluded while their lawsuit continues.").

Federal courts recognize that the imposition of the ultimate sanction occurs most frequently in cases where a party fabricates, destroys or alters evidence. Chemtall, Inc., 992 F. Supp. 2d at 1409; Quantum v. Communications Corp., 473 F. Supp.2d 1249, 1269 (S.D. Fla. 2007), affirmed, 2008 U.S. App. LEXIS 18418 (11th Cir. April 26, 2008)(inherent sanctions "most often invoked when a party commits perjury or destroys or doctors evidence").

Moreover, it is <u>uniform</u> in the federal courts that the ultimate sanction is the appropriate sanction where a party has fabricated evidence relating to a pivotal issue in the case. <u>Johnese v. Jani-King</u>, 2008 U.S. Dist. LEXIS 16435 * 5-6 (N.D. Tex. March 3, 2008)(ultimate sanction is "especially appropriate where a party manufactures evidence which purports to corroborate its substantive claims."); <u>Qantam Communications Corp.</u>, 473 F. Supp. 2d at 1269 ("Federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case" and such a nexus "militates heavily in the sanction of default."); <u>McDowell</u>, 1996 U.S. Dist LEXIS 19558 at * 23 ("When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate" and ultimate sanction was imposed against party when fabricated evidence related to "the linchpin of his case"); <u>Vargas</u>, 901 F.Supp. at 1580, 1581 ("The federal law is well established that dismissal [or default] is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims" and the ultimate sanction "is particularly appropriate" where the offending party's "fabricated evidence undermines the theory of the case").

Accordingly, there are numerous decisions by federal courts imposing the ultimate sanction against a party that, as here, fabricated evidence relating to a pivotal claim or fact in the case. <u>See</u> <u>e.g.</u>, <u>McDowell</u>, <u>supra</u>. (court imposed

11

ultimate sanction after it found that clear and convincing evidence established that plaintiff's produced purportedly contemporaneous diary citing discriminatory events was fabricated during lawsuit); Kojs v. Equifax Credit Information Services, 2004 U.S. Dist LEXIS 7948 (N.D. Ill. May 6, 2004)(ultimate sanction imposed against party for submitting forged documents in support of their claims); Poppe v. Federal Express Corp., 138 F.R.D. 675 (W.D. Mo. 1990), affirmed in relevant part, 974 F.2d 882 (8th Cir. 1992)(plaintiff's sexual harassment claim dismissed for producing fabricated note containing sexual comment from supervisor); Sun World, Inc. v. Olvarria, 144 F.R.D. 384, 390 (E.D. Cal. 1992)(default judgment appropriate where plaintiff submitted a false document); Aoude v. Mobil Corp., supra. (ultimate sanction imposed on party who relied upon fabricated agreement); Eppes v. Snowdon, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986)(default imposed where defendant committed fraud on the court by producing backdated letters).

Three ultimate sanctions cases for fabricating evidence are particularly applicable to Defendants' fraud on the Court in this case.

First, in REP MCR Realty LLC v. Lynch, 363 F. Supp.2d 984 (N.D. Ill. 2005), affirmed, 2006 U.S. App. LEXIS 19832 (7th Cir. July 19, 2006), the court imposed the ultimate sanction of dismissal on a plaintiff that had fabricated evidence. In determining that the stiffest sanction was warranted, the court stated:

12

> [The plaintiff's] production of the fabricated documents prejudiced his adversaries and the legal system generally. . . . The court considered the possibility of lesser sanctions – such as, perhaps, merely excluding the faked documents while allowing [Defendants] to use them for impeachment purposes – but such a sanction would be inadequate and hollow.  The court agrees with the precedent finding that when a litigant fabricates critical evidence, the interests of the judicial system militate strongly in favor of dismissal of the suit so as to deter all litigants from such misconduct in the future.

363 F. Supp. 2d at 1011-1012.

Similarly, in <u>Jimenez v. Madison Area Technical College</u>, 321 F.3d 652 (7th Cir. 2003), the plaintiff submitted in support of his discrimination claim certain statements allegedly written by other employees that included ethnic slurs about the plaintiff.  The employer learned from those employees that they never prepared the statements and it was illogical that they would have done so.  After reviewing the evidence, the court determined that the statements were fraudulent.  The court imposed the ultimate sanction of dismissal on the plaintiff because the fabricated documents were "inseparable" from the plaintiff's underlying discrimination claims.  321 F.3d at 657.

Finally, in <u>Greenburg v. Roberts Properties, Ltd</u>., 2006 U.S. Dist LEXIS 6776 (D. Ariz. Feb. 16, 2006), <u>affirmed</u>, 2007 U.S. App. 21330 (9th Cir.  June 4, 2007) , a tenant (Greenburg) filed a lawsuit against his lessor alleging that he was being evicted by the lessor for modifying plans for his mobile home on the lessor's

13

property but that the lessor's manager (Suddarth) had signed written approvals of the modified plans.

The lessor filed a motion for sanctions seeking dismissal of the lawsuit on the ground that Greenburg had committed fraud on the Court by proffering a forgery of Suddarth's signature on the modified plan documents.  2005 U.S. Dist. LEXIS 38094.  The lessor submitted a declaration from Suddarth stating that he did not sign the documents at issue and proffered an expert opinion that the signature was not Suddarth's.  Greenburg denied forging the documents and insisted that Suddarth had signed them.  The Court determined that Greenburg had committed fraud on the Court by proffering forged documents and by perjuring himself on the documents in his live testimony.  2006 U.S. Dist LEXIS 6776.  The Court concluded that Greenburg's denials of forgery were not credible.  As a result, the Court utilized its inherent sanctions authority and dismissed the lawsuit because the fraud was based on a pivotal issue in the case.  In addition, the Court ordered Greenburg to pay all of the defendants' reasonable costs and attorneys' fees – $136,115.

Similarly, in this case, the clear and convincing evidence establishes Defendants committed fraud on the Court by forging the Popke Statement and then producing it, relying upon it to assert its linchpin defense, and proffering it as evidence for trial.  Popke has testified he did not sign it and there is no reason for

14

him to lie. Even a layperson's view of the signatures establishes the forgery. An expert has opined that the applicable highly probable standard that Popke did not sign the Popke Statement has been met. Defendants have no logical or credible response.

Defendants committed fraud on the Court. The ultimate sanction of default is appropriate. Indeed, Plaintiff has identified no federal case where the ultimate sanction was not imposed when a party fabricated a document pivotal to its case as Defendants did here. The federal courts are uniform that conduct such as that engaged in by Defendants here warrants entry of a default judgment against them.

Accordingly, Plaintiff respectfully requests that the Court enter a default judgment and award Plaintiff her attorneys' fees and costs arising out of the Defendants' fraud.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter default judgment and an award of attorneys' fees and costs against Defendants as a sanction for their bad faith fraud on the Court.

Respectfully submitted,

s/Benjamin A. Stone
Georgia Bar No. 683850

                                                        s/Thomas J. Munger
                                                        Georgia Bar No. 529609

MUNGER AND STONE, LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-1884
Facsimile: (404) 815-4687        Attorneys for Plaintiff

## **CERTIFICATE OF COMPLIANCE ON FONT**

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B

Respectfully submitted,

s/Thomas J. Munger
Georgia State Bar No. 529609

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EVANGELINA FORSBERG )<br>)<br>)<br>   Plaintiff,        )<br>)<br>vs.                               )<br>)<br>JAMES PEFANIS,        )<br>AME FINANCIAL CORPORATION )<br>and GEORGIA MUTUAL    )<br>MORTGAGE CORPORATION    )<br>)<br>)<br>   Defendants.      )  | CIVIL ACTION<br>FILE NO. 1:07-cv-3116-JOF-RJV |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the "BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT SANCTION FOR DEFENDANTS' FRAUD ON THE COURT" with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to David C. Ates, Esq.

This 2nd day of September, 2009.

                                                      s/Thomas J. Munger
                                                      Georgia Bar No. 529609