# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Damon Smith, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:08-cv-01042-JOF-RGV |
| James Pefanis, et al., : | |
| : | |
| Defendants. : | |
| : | |
| : | |
| AND : | |
| : | |
| : | |
| Evangelina Forsberg, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 1:07-cv-03116-JOF |
| : | |
| James Pefanis, et al., : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

This matter is before the court on Plaintiff's motion to continue contempt sanctions against The Jeffries Group [137] filed in Civil Action No. 08-CV-1042-JOF.

On July 17, 2008, Plaintiff issued several Rule 45 subpoenas to various individuals and entities. This order concerns only The Jeffries Group and its principal Lewis Jeffries,

accountants for Defendants. The subpoena sought *inter alia* financial statements and records for Defendants Pefanis, AME, and Georgia Mutual as described in sixteen paragraphs. The Jeffries Group did not respond to Plaintiff's subpoena and Plaintiff moved to enforce it. The Jeffries Group did not respond to Plaintiff's motion to enforce. In an order dated October 30, 2008, the Magistrate Judge directed The Jeffries Group to produce any and all documents responsive to the subpoena within fifteen days.

The Jeffries Group did not produce any documents and Plaintiff filed a motion for contempt for The Jeffries Group's failure to comply with the Magistrate Judge's order of October 30, 2008. The Jeffries Group did not respond to Plaintiff's motion for contempt. The Magistrate Judge held a hearing on Plaintiff's motion for contempt on January 28, 2009. The Jeffries Group did not appear at the hearing. On July 10, 2009, Magistrate Judge Vineyard issued a Non-Final Report and Recommendation in which he recommended that there was sufficient evidence in the record to hold The Jeffries Group in civil contempt. The Jeffries Group filed no objection to that Report and Recommendation.

On August 31, 2009, the undersigned issued an order adopting the Report and Recommendation and directing The Jeffries Group to appear on September 30, 2009, to show cause why it should not be found in contempt. This time, Mr. Jeffries did contact the court, but only to request that he be excused from an appearance at the hearing contending he had complied with the document requests. The court refused to excuse Mr. Jeffries.

AO 72A
(Rev.8/82)

Unrepresented by counsel, Mr. Jeffries appeared at the hearing and did bring some documents. The court found, however, that these documents were not responsive to the subpoena which *inter alia* requested all documents used by Mr. Jeffries to prepare the 2007 and 2008 audited financial statements for Defendants AME and Pefanis. Mr. Jeffries offered that there were additional working documents at the client's office that he used and then returned to the client. Based on the information gleaned at the hearing, the court found that Mr. Jeffries was in contempt for failure to produce the documents sought in Exhibit A to Plaintiff's Rule 45 subpoena. The court imposed a fine of $500 per day until the production of documents was made. The court further directed that Mr. Jeffries would make the production available to Plaintiff's counsel no later than 4:00 p.m. on October 5, 2009. The court set a second hearing down for October 6, 2009, and warned Mr. Jeffries that if the court determined he was not in compliance, he would be placed in custody.

After this hearing, William Humphreys filed a notice of appearance on behalf of Mr. Jeffries. On October 6, 2009, Plaintiff informed the court that Mr. Jeffries had produced the 2008 audited financial statement and about 40 pages of working documents for both the 2007 and 2008 audit years. Plaintiff, however, believed these documents raised additional questions about the amount of cash held by AME. Plaintiff also noted that Mr. Jeffries had failed to produce the 2008 individual tax return for Defendant Pefanis, as well as other documents that would be expected to support the audited financial statements, such as bank

3

confirmations of cash balances in bank accounts. The court directed Mr. Jeffries to produce the documents incident to the audits by 5:00 p.m. October 6, 2009. The court also granted Plaintiff's counsel leave to depose Mr. Jeffries as to matters of cash. Mr. Jeffries was deposed on October 8, 2009.

On October 13, 2009, in *Forsberg v. Pefanis*, Civil Action No. 07-CV-3116-JOF, Defendants filed a motion to amend pre-trial order in which Defendants contended that the document Mr. Jeffries identified as AME's 2008 Audit Report was not a document ever presented to Defendants. The difference between the 2008 Audit Report as identified by Mr. Jeffries (at that time) and that Defendants assert they received from Mr. Jeffries was about $2 million in cash. The *Forsberg* case was about to go to trial and the net worth of AME was obviously going to be an issue at trial. The parties went back and forth as to whether Mr. Jeffries was going to have to testify. Eventually, the parties reached a stipulation that the net worth of AME was $6.8 million and Mr. Jeffries was not called to testify at the *Forsberg* trial.

After the conclusion of the *Forsberg* trial, Plaintiff moved in the instant *Smith* case to continue the sanctions against Mr. Jeffries on the basis of Defendants' claim that Mr. Jeffries presented potentially false documents. The court set a hearing for the matter on November 17, 2009. At the hearing, Plaintiff's counsel stated that at the time he took Mr. Jeffries's deposition on October 8, 2009, he believed that Mr. Jeffries had produced all of

4

the information he was required to produce. However, on October 20, 2009, Mr. Jeffries issued a seven page errata sheet to his deposition. The changes were extensive and purported to replace some answers with completely new multiple-sentence explanations that often directly contradicted his deposition testimony.

Mr. Jeffries's counsel explained that Mr. Jeffries had produced the 2007 and 2008 audited financial statements at the October 8, 2009, deposition. At that time, Mr. Jeffries remembered only one set of financials for 2008. However, at the deposition, AME's counsel reminded Mr. Jeffries that there had been two sets of audited financials for 2008. The problem arose, Defendants aver, because there was a certain amount of mortgages held pending for sale around the end of the year. Mr. Jeffries's policy was to count those items as "cash" if the pending sale was to close within ten days. It is Defendants' position that numerous mortgages at the end of 2007 did not close within ten days and therefore, the value of those mortgages could not be attributed to cash and for that reason, Mr. Jeffries restated the 2008 financial statement to reflect that and the restatement lowered the cash held by AME by $2 million.

Mr. Jeffries's counsel also represented to the court that due to Mr. Jeffries's extreme concern about complying with the court's order, Mr. Jeffries apparently created out of whole cloth bank confirmation records purporting to show amounts held in various accounts. There is no dispute that those confirmation records are sham. Mr. Jeffries apparently created

5

these documents to show what had happened during the audit because the originals were lost. According to his counsel, he was scared that he did not have the original records, so he constructed new ones.

The transcript of the record will reflect that at the November 17, 2009, hearing, Plaintiff's counsel and Mr. Jeffries's counsel went back and forth with the court as to whether there were dependable records which could reflect the accurate cash value of AME at the time of the 2008 financial audit. The court ultimately concluded that there was no line item on Mr. Bonertz's working list of assets that would admit the possibility of cash being held somewhere pending funding of mortgages for sales occurring within ten days. That is, the court could not discern from the Bonertz documents or the audit prepared by Mr. Jeffries that the $2 million cash discrepancy was wholly related to the issue of funding mortgages that did or did not close within ten days at the end of the year. The court also expressed concern that Mr. Jeffries had at one point represented that he based his cash calculation in 2008 on audits that had been done in previous years, but this representation would appear to be inconsistent with the errata sheet filed by Mr. Jeffries which proffers the theory that the cash issue arose only at the end of 2007 due to pending mortgages.

For these reasons, the court determined that Mr. Jeffries was still in contempt for failure to produce the documents requested in the Rule 45 subpoena. The court noted, however, that the parties and the court had all been treating the motion for contempt as if it

AO 72A
(Rev.8/82)

were occurring in the *Forsberg* proceeding. Because of this connection to the *Forsberg* case, the court rules that Mr. Jeffries will be fined $500 per day from the September 30, 2009, hearing holding him in contempt until the date of the verdict in the *Forsberg* case on October 16, 2009.[1] *See Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) (court may impose sanction in form of prospective per diem fine payable to court in order to coerce contemnor into compliance); *In re Chase & Sanborn Corp.*, 872 F.3d 397 (11th Cir. 1989) (coercive fine in civil contempt proceedings must be paid into court registry).

The court then directed Plaintiff's counsel to file a new motion to compel in the instant *Smith* case specifying which documents Plaintiff still seeks from Mr. Jeffries. Any future litigation concerning Mr. Jeffries's compliance will stem from that motion to compel as directed in the court's minute order of November 17, 2009.

---

[1] The court notes that at the November 17, 2009, hearing it stated that Mr. Jeffries's daily fine was $150. However, a review of the record from the September 30, 2009, hearing shows that the court imposed a fine of $500 per day on Mr. Jeffries until he purged himself of contempt. The purpose of the fine was coercive as the record before the court demonstrated Mr. Jeffries's substantial disregard for prior orders of the court and the Magistrate Judge.

7

**Conclusion**

The court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to continue contempt sanctions against The Jeffries Group [137] filed in Civil Action 08-CV-1042-JOF.

Mr. Jeffries is DIRECTED to pay $500 per day for 16 days for a total of $8,000. Mr. Jeffries is DIRECTED within thirty (30) days of the date of this order to pay $8,000 to the Clerk of the Court, United States District Court, Northern District of Georgia, to be deposited into the United States Treasury.

**IT IS SO ORDERED** this 18th day of November 2009.

/s J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)